UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

JOHNNY HILL,

                      Plaintiff,

   -against-

THE STATE OF NEW YORK,

                  Defendant.

------------------------------------X

12 Civ. 0466 (RWS)

OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/7/12

A P P E A R A N C E S:

    <u>Pro Se</u>

    JOHNNY HILL

    <u>Attorneys for Defendants</u>

    ERIC T. SCHNEIDERMAN
    ATTORNEY GENERAL OF THE STATE OF NEW YORK
    120 Broadway, 24th Floor
    New York, NY 10271
    By:  Rebecca Ann Durden, Esq.

1

**Sweet, D.J.**

Plaintiff Johnny Hill ("Hill" or the "Plaintiff") has moved for default judgment against the Defendant State of New York (the "State" or the "Defendant"). The State has moved pursuant to Rule 55(c) of the Federal Rules of Civil Procedure to vacate the default and moved pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the Plaintiff's complaint (the "Complaint"). Based on the conclusions set forth below, the motion of the Plaintiff is denied, the default of the State is vacated and the cross-motion of the State to dismiss the Complaint is granted.

## I. Prior Proceedings and Facts

The facts are set forth in the Complaint and the declarations submitted by the parties and are not in dispute except as noted below.

On November 30, 2011, the Plaintiff attended a court appearance of two individuals who were suspects in the shooting death of his son in the Bronx Criminal Court. (Compl. ¶¶ 19-

20). While at the courthouse, the Plaintiff alleges that, after engaging in a verbal altercation with a court officer, he was arrested and placed in a holding cell (Id. ¶¶ 21-24). The Plaintiff also alleges that the court officer subsequently entered the cell area with several of the Plaintiff's children in handcuffs and also placed them in holding cells. (Id. ¶¶ 25-27).

The Complaint alleges that after "12 hours of being tortured, handcuffed behind the back, no food, no water, sleep deprivation, no to phone call, no to use of the bathroom . . . [he] began to show signs of a heart attack." (Id. ¶ 29). According to the Plaintiff, only after approximately 4:00 a.m., after 18 hours of being held, were his handcuffs removed and he was given food. (Id. ¶ 30).

The Complaint also alleges that the court officer falsely labeled the Plaintiff and his children as members of a gang and reported this information to a Daily News reporter. (Id. ¶ 31).

The Complaint also alleges an action against the State for damages "to redress the deprivation of rights secured [to]

him by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States [C]onstitution, and under the Civil Rights Act of 1871," 42 U.S.C. §§ 1983, 1988. (Id. ¶ 10). More specifically, the Complaint alleges violations of constitutional rights under § 1983 and due process, conspiracy to violate civil rights, assault and battery, intentional infliction of emotional distress, and two counts of negligence. (Id. ¶¶ 41-56).

On January 19, 2012, the State was personally served at the Office of the Attorney General in New York, New York. No response was filed by the State and on March 26, 2012, the Plaintiff obtained a Clerk's Certificate pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. The Plaintiff now seeks a default judgment against the State and $10,500,350 in damages.

The motion and cross-motion were marked fully submitted on June 6, 2012.

## II.  **The Applicable Standards**

Rule 55

Once a default judgment has been entered pursuant to Rule 55(a), a defendant may oppose the entry of the default pursuant to Rule 55(c). <u>Citadel Mgmt, Inc. v. Telesis Trust, Inc.</u>, 123 F. Supp. 2d 133, 142 (S.D.N.Y. 2000). Where entry of a default judgment is opposed, the standard for granting such a judgment under Rule 55 is governed by the same principles that apply to a motion to set aside entry of a default. <u>See Commercial Bank of Kuwait v. Rafidain Bank</u>, 15 F.3d 238, 243 (2d Cir. 1994).

Thus, "[u]nder Rule 55(c), 'the principal factors bearing on the appropriateness of relieving a party of a default are whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981). This test should be applied in the context of the general preference "that litigation disputes be resolved on the merits, not on default." <u>Cody v. Mello</u>, 59 F.3d 13, 15, (2d Cir. 1995). Doubts should be resolved in the non-moveant's favor to increase the likelihood that the case may be resolved on the merits. <u>See Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993); <u>see also Meehan</u>, 652 F.2d at 277 (stating that "[w]hile courts are entitled to enforce compliance with the

time limits of the Rules by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort."); SEC v. Mgmt. Dynamics, Inc., 515 F.2d 801, 814 (2d Cir. 1975) (describing default judgments as "the most severe sanction which the court may apply.").

Rule 12(b)(1)

A facially sufficient complaint may be "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Once subject matter jurisdiction is challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. See Thomson v. Gaskill, 314 U.S. 442, 446, 62 S. Ct. 673, 86 L. Ed. 951 (1942) (citations omitted). The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction. See Makarova, 201 F.3d at 113.

"[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences

6

favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citations omitted). As such, a court may rely on evidence outside of the pleadings, including declarations submitted in support of the motion and the records attached to these declarations. See Makarova, 201 F.3d at 113 ("In resolving a motion to dismiss . . . under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

## III. Discussion

The Default Was Not Willful

The Second Circuit has interpreted willfulness in the default judgment context to refer "to conduct that is more than merely negligence or careless." SEC v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998). The failure to respond must be from "the result of a shortcoming more culpable than negligence or even gross negligence." Id.

Here, there is no finding and no basis for a finding that the State's failure to file responsive papers in a timely manner was willful. A search of the Attorney General Office's

7

records has determined that on January 25, 2012 the Harlem Regional Office had forwarded the original Complaint, stamped "received by mail/fax on January 24, 2012" to the New York City office. Upon its receipt, the Complaint was put in a file to be monitored based on the inadvertent belief that, because service was attempted by mail or fax, service was insufficient. Such errors do not rise to conduct that is more than merely negligent or careless. See e.g., American Alliance Ins. Co, Ltd. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996) (finding that a default due to a filing mistake by the defendant's in-house counsel's clerk who assumed the case had been assigned and whose misfiling went unnoticed for two months was not willful, deliberate, or evidence of bad faith.).

The Plaintiff's request for a default judgment, however, indicates personal service and thus, the State immediately contacted this Court and requested an extension to respond to the Complaint. Accordingly, any default by the State was caused by, at most, negligence or even gross negligence, but not willful conduct. As soon as the State became aware of the potential default, an extension of time was obtained from the Court to respond to the Complaint and the State subsequently filed a motion to dismiss on April 20, 2012.

<u>There is No Prejudice and A Meritorious Defense Exists That Warrants Granting the Motion to Dismiss</u>

It is undisputed that "delay alone cannot be the basis for a claim of prejudice." <u>Silva v. Bridgebar LLC</u>, No. 09-8281, 2011 WL 3423917, at *2 (S.D.N.Y. Aug. 4, 2011) (quoting <u>Davis v. Musler</u>, 713 F.2d 907, 916 (2d Cir. 1983)). "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide other greater opportunity for fraud and collusion." <u>Id.</u> (quoting 10 C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL, § 2699 at 536-37 (1983)).

In addition, to show a meritorious defense, "the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." <u>McNulty</u>, 137 F.3d at 740 (citations and quotations omitted).

Here, the Plaintiff alleges that the State "after answering to the wrong court simply ignored the Federal Case and decided to state the case was put in a holding file for improper service." (Pl. Reply ¶ 3). The Plaintiff first served this

action in January and the motion to dismiss was served on April 20, 2012. The four month delay does not constitute a significant delay sufficient to cause any prejudice and the Plaintiff has made no such claim. The Plaintiff has not established a loss of evidence, increased difficulties with discovery or a greater opportunity for fraud.

Regardless of the default, the Plaintiff can neither maintain this action against the State nor can he recover damages from the State. Even assuming that there has been a delay, the Defendants have a complete defense that Plaintiff's action is barred by the Eleventh Amendment to the U.S. Constitution. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 59, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996); Papasan v. Allain, 478 U.S. 265, 276, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986). The Eleventh Amendment bars a suit in a court by a citizen of a state against that state, or one of its agencies, absent its consent to such a suit or an express waiver of immunity. See e.g., Florida Dept. of Health v. Florida Nursing Home Assn., 450 U.S. 147, 101 S. Ct. 1032, 67 L. Ed. 2d 132 (1981). These two exceptions to absolute immunity, that the state's consent to be sued or Congress' intent to abrogate the state's immunity from suit, must be unmistakably clear and

unequivocal. Dellmuth v. Muth, 491 U.S. 223, 227-28, 109 S. Ct. 2397, 105 L. Ed. 2d 181 (1989)

It is well-settled that the State of New York and its agencies have not consented to suit in federal court. See Troutman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 28-40 (2d Cir. 1977). The provisions of 42 U.S.C. § 1983 were not intended to override a state's immunity. Quern v. Jordan, 440 U.S. 332, 343, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979). Nor is the State's Eleventh Amendment immunity overridden by raising a due process claim directly under the Fourteenth Amendment. See Santiago v. N.Y. State Dept. of Correctional Servs., 945 F.2d 25, 32 (2d Cir., 1991). Thus, the Eleventh Amendment absolutely bars the Plaintiff's suit under Section 1983 and the Fourteenth Amendment against the State or one of its agencies regardless of the relief sought. See e.g., Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100-01, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984).

## IV. Conclusion

For the reasons set forth above, the motion of the Plaintiff is denied, the Rule 55(a) default is vacated and the cross-motion of the State to dismiss is granted.

It is so ordered.

New York, NY
August 7, 2012

_____
ROBERT W. SWEET
U.S.D.J.

12